[No. 1225, August 2, 1910.]

UNITED STATES OF AMERICA, Plaintiff in Error, v. OLIVER M. LEE, et als., Defendants in Error.

### SYLLABUS.

1. Irrigation systems may be constructed and rights of way acquired upon unsurveyed land, without first seeking the consent of the Secretary of the Interior. This consent,

however, would be necessary in case of parks and reservations where permanent rights cannot be acquired.

2. Injunction will not lie in favor of the government against defendants to enjoin them from going upon unsurveyed public lands and taking possession of them for the purpose of acquiring a right-of-way over the unsurveyed public lands of the United States for irrigation purposes without first filing maps and obtaining the approval and permission of the Secretary of the Interior so to do.

Error to the Sixth Judicial District Court before EDWARD A. MANN, Associate Justice. Affirmed.

W. H. H. LLEWELLYN and D. J. LEAHY for Plaintiff in Error.

Can a person acquire a right of way for a canal, ditch, reservoir or pipe line on the unsurveyed public lands of the United States without first obtaining the permission of the Department of the Interior? is to be determined from Congressional legislation upon the subject and the construction to be given such legislative acts. 26 Stat. L. 1101, 1102, 6 Fed. St. Ann., pp. 508-510; Whitemore v. Pleasant Valley Coal Co., 27 Utah 284; 28 Stat. L. 635, 6 Fed. Stat. Ann. 510; 29 Stat. L. 120, ch. 179, 6 Fed. Stat. Ann. 510, 511; 30 Stat. L. 404, 6 Fed. Stat. Ann. 512; Town of Delta, 32 L. D 144; Denver, etc., Ry. Co. v. Hydro. Electric Power Co., 32 L. D. 452; 25 L. D. 344; South Platte Canal & Reservoir Co., 20 L. D. 154; Chaffee County Ditch &·Canal Co., 21 L. D. 63; 31 Stat. L. 790, 6 Fed. Stat. Ann. 513; 26 A. & E. Enc. Law, 2 ed. 619, 730, 744; Nelden v. Clark, 20 Utah 382; Sutherland Stat. Con., 2 ed., vol. 1, pp. 461, 463; U. S. v. Claflin, 97 U. S. 546, 551; Grivenner v. Lehigh, etc., Ry. Co., 55 Pa. St. 126; ex parte Joffee, 46 Mo. App. 360, 367; King v. Trustee, 5 B. & Ad. 978; Curtis v. Gill, 37 Conn. 49; Sutherland Stat. Const., 2 ed., vol. 1, pp. 472, 473; Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155; United States v. Tymen, 11 Wall. 88; Bracken v. Smith, 39 N. J. Eq. 169; Roche v. Jersey City, 40 N. J. Law 257; Winslow v.

Norton, 188 N C. 486, 491; 24 S. E. 417; Commonwealth
v. Mann, 168 Pa. St. 290, 31 Atl. 1003; United States v.
Raulett, 172 U. S. 133; Henrietta M. & M. C. v. Gardner,
173 U. S. 123; Mersereau v. Mersereau, N J. Eq., 26 Atl.
682; Anderson v. City Council, N. J., 33 Atl. 846; Rogers
v. Watrous, 8 Tex. 62; City and County of Sacramento v.
Bird, 5 Cal. 284; Pierpont v. Crouch, 10 Cal. 315; Wood
& State, 47 Ark. 488, 1 S. W. 709; State v. Studt, 31 Kan.
235, 1 Pac. 635; 34 L. D. 229; 31 L. D. 14; 33 L. D. 389;
Birdsall v. Clark, 73 N. Y. 73; Thomson v. Schermer-
horn, 6 N Y. 92; Denver, etc., Ry. Co. v. Hydro Electric
Power Co., 32 L. D. 452; Opinion 32 L. D. 597; McHenry
v. Winston, 49 S. W. 4; 33 L. D. 389; 34 L. D. 230; 31
L. D. 14; Vestal v Young, 147 Cal. 715, 82 p. 381; Bliss
on Code Pleading, 3 ed., sec. 418; Union River Logging
Ry. Co., 19 Op. Atty. Gen. 546; Railway Co. v. Alling,
99 U. S. 463.

HAWKINS & FRANKLIN for Defendants in Error.

The United States does not have the right to enjoin
one of its citizens from maintaining a ditch which has been
constructed by such citizen for the purpose of irrigation
over the unsurveyed public lands of the United States. 26
Stat. L. 1101, 1102; 18 Stat. L. 482; Jamestown & North-
ern Ry Co. v. Jones, 177 U. S. 125; Washington & I. R.
Co. v. Coeur d'Alene R. & N. Co., 52 Fed. 765; 28 Stat.
635; 29 Stat. 120; 30 Stat. 404; 26 Stat. 1095; 21 A. &
E. Enc. Law, 2 ed., 1012; State v. Gilmore, 11 S. W. 621;
United States v 1150½ lbs. of celluloid, 82 Fed. 625;
Crystal Spring Dis't. Co. v. Cox, 49 Fed. 559; Western
Grading & Improvement Co. v. Helmier, 111 Fed. 123;
Newport News Co. v. United States, 61 Fed. 488; United
States v. Mollie, 26 Fed. 1290.

### STATEMENT OF THE CASE.

Plaintiff in error, hereafter referred to as plaintiff,
filed its amended complaint on the 4th day of June, 1907,
to which complaint a demurrer was filed by one of the
defendants in error, Oliver M. Lee, challenging the suffi-

ciency of the amended complaint. The complaint alleged
substantially that in the County of Otero, Territory of
New Mexico, and upon unsurveyed lands of the United
States of America, the defendants, or some of them, have
been and are now unlawfully maintaining certain ditches,
canals and pipe lines on the said public lands of the United
States of America, which ditches, canals and pipe lines are
being maintained in violation of the laws of the United
States and the rules and regulations promulgated by the
Department of the Interior; that the defendants, together
with their agents, servants, and workmen have heretofore
constructed, and are now unlawfully maintaining irrigat-
ing ditches, canals and pipe lines upon the public lands
of the United States in the vicinity above described in the
complaint, for the purpose of conducting waters from Dog
Canon and San Andres Canon to certain lands now in the
possession of the defendants; that in constructing and build-
ing said ditches, canals and pipe lines the said defendants
are unlawfully appropriating public lands of the United
States without authority from the said United States or
the Secretary of the Interior to build or construct any
such canals, pipe lines or ditches through or over the said
public lands; that the plaintiff is informed that defendants
give out and threaten to continue the building and con-
structing of said canals and ditches without authority of
law and to maintain the same and appropriate the waters
from the said Dog Canon and said San Andres Canon and
conduct the said water through said pipe lines and ditches
over the public lands of the United States; that upon parts
of the lands through which said canals, ditches and pipe
lines have been so constructed, bona fide settlers have settled
upon certain lands with the bona fide intention of entering
the same at the proper land office when said lands shall
have been surveyed and thrown open to entry; and the
plaintiff further alleges that the defendants, their agents
and servants have no authority in law to go upon the pub-
lic lands of the United States and construct any ditches,
canals and pipe lines for the purpose of conducting water,
or for any other purpose without express authority of the
Secretary of the Interior as provided by law for the giv-

ing of such authority, and that the unlawful acts of the said defendants in so constructing such ditches and canals without authority, will cause great loss and damage to the plaintiff and that plaintiff has no adequate remedy except by injunction, which is prayed for, and a temporary writ of injunction was allowed.

In order that the acts of Congress vital to a decision of this case may be before the court at the outset, sections 18, 19, 20 and 21 of the Act of Congress of March 3, 1891, (6th Fed. St. Ann. pp. 508, 509 and 510) are set out in full.

"Sec. 18. (Right of way through public lands and reservations to canal or ditch companies for irrigation). That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any state or territory, which shall have filed, or may hereafter file, with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof, also the right to take from the public lands adjacent to the line of the canal or ditch, material, earth and stone necessary for the construction of such canal or ditch. *Provided,* That no such right-of-way shall be located as to interfere with the proper occupation by the government of any such reservation and all maps of location shall be subject to the approval of the department of the government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective states or territories. (26 Stat. L. 1101.)

"Sec. 19. (Maps to be filed—grants subject to right-of way—damages to settlers.) That any canal or ditch company desiring to secure the benefits of this act shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed land, and if upon unsurveyed land, within twelve months after the survey

thereof by the United States, file with the register of the land office for the district where such land is located, a map of its canal or ditch and reservoir and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way. Whenever any person or corporation, in the construction of any canal, ditch or reservoir, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage. (26 St. L. 1102)."

"Sec. 20. (Applicable to existing and future canals, etc.—forfeiture for non-completion.) That the provisions of this act shall apply to all ditches, canals or reservoirs heretofore or hereafter constructed whether constructed by corporations, individuals or association of individuals, on the filing of the certificates and maps herein provided for. If such ditch, canal or reservoir has been or shall be constructed by an individual or association of individuals, it shall be sufficient for such individual or association of individuals to file with the Secretary of the Interior, and with the Register of the Land Office where said land is located, a map of the line of such canal, ditch or reservoir, as in case of a corporation, with the name of the individual owner or owners thereof, together with the articles of association if there be any. Plats heretofore filed shall have the benefits of this act from the date of their filing, as though filed under it. *Provided*: That if any section of said canal or ditch shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any incompleted section of said canal, ditch or reservoir, to the extent that the same is not completed at the date of the forfeiture. (26 Stat. L. 1102)

"Sec. 21. (Rights granted only for canal use,) That nothing in this act shall authorize such canal or ditch company to occupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance and care of said canal or ditch. (26 Stat. L. 1102).

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Interior be and hereby is authorized and empowered under general regulations to be fixed by him, to permit the use of rights of way through the public lands, forest and other reservations of the United States, and the Yosemite, Sequoia and General Grant National parks, California, for electrical plants, poles and lines for the generation and distribution of electrical power, and for telephone and telegraph purposes, and for canals, ditches, pipes and pipe lines, flumes, tunnels, or other water conduits, and for water plants, dams and reservoirs used to promote irrigation or mining or quarrying, or the manufacturing or cutting of timber or lumber, or the supplying of water for domestic, public, or any other beneficial uses to the extent of the ground occupied by such canals, ditches, flumes, tunnels, reservoirs, or other water conduits, or water plants, or electrical or other works permitted hereunder, and not to exceed fifty feet on each side of the marginal limits thereof, or not to exceed fifty feet on each side of the center line of such pipes and pipe lines, electrical, telegraph, and telephone lines and poles, by any citizen, association or corporation of the United States, where it is intended by such to exercise the use permitted hereunder or any one or more of the purposes herein named: *Provided,* That such permits shall be allowed within or through any of said parts or any forest, military, Indian or other reservations only upon the approval of the chief officer of the department under whose supervision such park or reservation falls and upon the finding by him that the same is not incompatible with the public interests; *Provided further,* that all permits given hereunder for telegraph and telephone purposes shall be subject to the provision of Title 65 of the Revised Statutes of the United States, and amendments thereto, regulating rights of way for the telegraph companies over the public domain; *and provided further,* that any permission given by the Secretary of the Interior under the provisions of this act may be revoked by him or his successor in his discretion, and shall not be held to confer any right, or easement, or interest in, to or

over any public land, reservation or park." Act Feby. 15th, 1901.

The demurrer to the amended complaint was argued by counsel and sustained by the court in an opinion rendered June 25th, 1907. The demurrer having been sustained on the 25th day of June, 1907, said cause was dismissed and on the 19th day of February, 1908, a *nunc pro tunc* decree to that effect was entered as of the date June 25, 1907. The cause is brought to this court by Writ of Error sued out on behalf of the plaintiff in the court below.

### OPINION OF THE COURT.

McFIE, J.—There is but one question for determination in this case and that is whether or not the defendants, or Oliver M. Lee, the demurrant herein, could acquire a right of way for a canal, ditch, reservoir, or pipe line such as he contemplated constructing, or had partially constructed, on and over the unsurveyed public lands of the United States without first having obtained the permission of the Department of the Interior as provided by the statute in regard to surveyed public domain. In the lower court this seems to have been conceded to be the only question for the court's determination. In sustaining the demurrer, Justice Edward A. Mann, presiding judge of the Sixth Judicial District, in which this case arose, handed down a carefully considered opinion in which all of the statutes involved were examined and applied to the case at bar and in as much as the opinion rendered by the lower court, in our opinion, states the law of the case correctly, such portions of the opinion as are deemed necessary to a determination of the case in this court will be, in whole or in part, restated here.

It becomes necessary for us to refer to, and to some extent consider, the sections above quoted of the act of Congress of March 3rd, 1891, and also make reference to the act of Congress of February 15th, 1901, in-as-much as there is some contention in this case that the latter act materially modified or repealed those sections of the former act, and it is necessary for the court to ascertain

whether this contention of the plaintiff in error is correct
or not.    The act of March 3rd, 1891, is a very compre-
hensive act and governed the practice as to the obtaining
of rights of way for canals, ditches and reservoirs for many
years and it governed the obtaining of these rights of way
over both surveyed and unsurveyed lands and clearly de-
fined the mode of obtaining those rights of way, depending
upon whether the lands were surveyed or unsurveyed.

Sec. 18, *supra,* contains a grant of right of way
through the public lands and reservations of the United
States to any canal or ditch company, duly organized,
which shall file proof thereof, as prescribed, with the Sec-
retary of the Interior for ditches, canals or reservoirs, in-
cluding the right to take stone, earth or other material
necessary for the construction of such canal, ditch or reser-
voir, from the adjacent lands for the construction thereof,
and Sec. 20 makes these provisions applicable to individ-
uals or associations.    The language of this section is almost
identical so far as the granting clause is concerned, with
section 1 of the Act of March 3, 1875, granting rights of
way to railroad companies over the public lands (18 St. L.
482, 6 Fed. St. Ann. 501), and this has been held by the
Supreme Court of the United States to grant to a railroad
company which has actually constructed its road, an abso-
lute right of way over the public lands superior to the
rights of any subsequent entry of the land, although the
required profile maps had not been filed as provided by
Sec. 4 of the act.    Jamestown & Northern Ry. Co. v.
Jones, 177 U. S. 125 ; W. & I. R. Co. v. Coeur d'Alene R.
& N. Co., 52 Fed. 765.

In the case at bar the lands are unsurveyed lands and
under the provisions of Sec. 19, *supra,* no maps or plats
are required to be filed until within twelve months after
the lands have been surveyed.    It is alleged in the com-
plaint, however, that the ditches, etc., of the defendants
have already been constructed and are now being main-
tained, so that the same condition prevails as in James-
town & Northern Ry. Co. v. Jones, *supra,* except that in
the case here the lands are unsurveyed.    In that case a
distinction is drawn between constructed roads and pro-

posed roads desiring to acquire rights of way prior to con-
struction on surveyed lands, and the actual construction of
the road is held to answer the purpose of filing the profile
maps by giving notice of the tract claimed as such right
of way; but the court says, quoting from Sec. Vilas, in
Dakota Central Ry. Co. v. Downey, 8 Ld. 115:

"As to the road way, the construction of the road
fixes the boundaries of the grant and fixes it by the exact
rule of the statute. * * * This must undoubtedly be the rule
when the road is constructed over unsurveyed lands, because
then that every condition necessary to the vigor of the
present grant is complied with."

The act under consideration (Act March 3, 1875) con-
tained an almost identical clause with reference to the
filing of maps in case of unsurveyed lands within twelve
months after the survey thereof by the United States.

The Department of the Interior, in its regulations
concerning rights of way for canals, ditches and reser-
voirs, issued September 28th, 1905, (which it will be ob-
served is after the passage of the Act of February 15,
1901, says at Sec. 16:

"Maps showing canals, ditches and reservoirs wholly
upon unsurveyed lands, may be received and placed on
file in the general land office and the local land office in
the district in which the same is located, for general in-
formation, and the date of filing will be noted thereon; but
the same will not be submitted to nor approved by the
Secretary of the Interior, as the act makes no provision
for the approval of any but maps showing the location in
connection with the public surveys. The filing of such
maps will not dispense with the filing of maps after the
surveys of the lands and within the time limited in the
act granting the right of way, which maps if in all re-
spects regular when filed, will receive the Secretary's ap-
proval.'"

From this provision of the regulations issued as late
as 1905, or about four years after the Act of February 15,
1901, was passed, the Interior Department recognizes that
Congress intended that any person may go upon unsur-
veyed public lands of the United States, lawfully, and

construct irrigating ditches, canals or reservoirs whose main purpose is that of irrigation, filing his map or plat of the same twelve months after the survey of the lands by the government, for the approval of the Secretary of the Interior; and that the grant becomes fixed so far as the right of way is concerned, upon the construction of the ditch or canal, the approval of the Secretary afterwards being in the nature of a confirmation of the grant and a completion of the title thereof upon the records kept by the government.

But it is contended by the plaintiff in error that the Act of February 15, 1901, modifies the former act so that no right of way can be acquired upon the public lands of the United States, surveyed or unsurveyed, without first obtaining permission from the Secretary of the Interior. The Act of 1901, however, has received no such construction from the Department of the Interior. In fact, the Hon. Secretary in Sec. 47 of the circular of regulations, draws the distinction between the two acts, in the following apt language:

"It is to be especially noted that this act (1901) does not make a grant in the nature of an easement, but authorizes a mere permission in the nature of a license, revokable at any time, and it gives no right whatever to take from the public lands, reservations or parks adjacent to the right of way, any material, earth or stone for construction or other purposes."

Sec. 46 of these regulations of the Interior Department of 1905, in construing the act of February 15, 1901, and providing regulations in pursuance of that act, provides:

"Although this act does not expressly repeal any provision of law relating to the granting of permission to use rights of way, contained in the act referred to, yet, considering the general scope and purpose of the act, and Congress having, with the exception above noted, embodied therein the main features of the former acts relative to the granting of a mere permission or license for such use, it is evident that, for purposes of administration the lat-

ter act should control in-so-far as the same pertains to the granting of permission to use rights-of-way for the purposes therein specified. Accordingly, all applications for permission to use rights-of-way for the purposes specified in this act must be submitted thereunder. Where, however, it is sought to acquire a right-of-way for the main purpose of irrigation, as contemplated by Sections 18 and 21 of the Act of March 3, 1891, and Sec. 2 of the Act of May 11, 1898, *supra,* the application must be submitted in accordance with the regulations issued under said acts."

It is clear that the Hon. Secretary of the Interior did not take the view that the Act of February 15, 1901, repealed or modified the Act of March 3, 1891, and Sec. 2 of the Act of May 11, 1898, the latter act being amendatory of the Act of March 3, 1891, making it plain that the Act of March 3, 1891, still applied to cases where the main purpose of the construction of ditches or canals was for irrigation and not to cases arising under the Act of February 15, 1901, which applied to parks, forest and other reservations and for the construction of electric plants, poles and lines for the generation and distribution of electrical power, and for telephone and telegraph purposes, as well as for canals, ditches, pipes and pipe lines, flumes, tunnels and other water conduits and for water plants, dams and reservoirs to promote irrigation, for it is very evident that the main purpose of the Act of February 15, 1901, was not to grant rights of way for canals, ditches and reservoirs for irrigation purposes mainly, but for many other purposes as well. It is quite significant that the Secretary in his regulations issued in 1905, construing the act of 1901, should use the language above quoted, indicating that the acts of 1891 and 1898 were still in force, where, in the construction of such canals, ditches and reservoirs, the main purpose of which, was, as in the present case, irrigation.

The term public lands, as used in the act of 1901, seems to be used in different sense than the same term is used in the act of 1891, in this, that the act, while using the term public land applies it to lands subject to use for

parks, reservations and other purposes by act of the United States, necessitating the granting of a permit or license only for right of way purposes, whereas under the former act, an easement attaches, which by the approval and confirmation of the Secretary of the Interior after survey may become permanent, as in the case of a railroad right-of-way, provided, that the right-of-way appropriated upon unsurveyed lands by the construction of canals, ditches or reservoirs has for its main purpose the irrigation of lands, as provided for in the act of 1891, as amended by the act of 1898. Lands covered by parks, reservations, etc., are still lands of the United States, but are not public lands in the same sense as when free from the limitations of such incumbrances. Thus it will be seen that there is no conflict between those laws; both of them may stand, and being construed together each may serve the purpose intended by Congress depending upon the conditions existing at the time.

It has long been the policy of the government to encourage irrigation in the arid and semi-arid west. Congress in its wisdom, has enacted such laws as will enable rights-of-way to be acquired for such irrigation works over the public lands and thus encourages the development of the country. The tendency has been toward more liberal laws in that regard, and it is a matter of common knowledge that in this Territory it has been the custom for years to enter on the unsurveyed public lands of the United States and construct such ditches, canals, pipe lines and reservoirs as were necessary to put the waters of the streams to a beneficial use for agricultural and kindred purposes.

Now, it is apparent, as regards the construction of ditches and canals for irrigation purposes upon unsurveyed land, that if the approval of the Secretary of the Interior must be had before any such construction can be made, it would be tantamount to saying that no such ditches, canals or reservoirs could be constructed upon unsurveyed public domain for the reason that Sec. 19 of the act of Congress of 1891 provides that

"Any canal or ditch company desiring to secure the benefits of this act shall, within twelve months after the

location of ten miles of its canal, if the same be upon surveyed land, and if upon unsurveyed land within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a map of its canal, ditch or reservoir, and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats of said office," etc., showing that corporations, associations or persons may lawfully enter upon unsurveyed public land and obtain a right-of-way for the construction of ditches, canals, etc., whose main purpose is for irrigation, and maintain the same until twelve months after the survey of. the lands by the United States, at which time maps, plats, etc., must be filed in compliance with the Act of Congress. However, years might elapse before such surveys were made by the United States. The regulations of the Secretary of the Interior above referred to, provide for the filing of maps, plats, etc., within twelve months after the location of ten miles of a canal, provided the same be upon surveyed lands, but, as to unsurveyed lands, we find provisions indicating that the filing of such maps, plats, etc., and the approval of the Secretary of the Interior of such right-of-way is wholly unnecessary and, in fact, such approval could not be made by the Secretary.

"Maps showing canals, ditches or reservoirs wholly upon unsurveyed lands, may be received and placed on file in the general land office and the local land office of the district in which the same is located, for general information; and the date of filing will be noted thereon but the same will not be submitted to nor approved by the Secretary of the Interior, as the act makes no provision for the approval of any but maps showing the location in connection with the public surveys. The filing of such maps will not dispense with the filing of the maps after the survey of the lands and within the time limited in the act granting the right-of-way, which maps, if in all respects regular when filed will receive the Secretary's approval."

In the regulation just quoted, the Secretary of the Interior distinctly states that no such approval or permission as the law contemplates could be granted for a right-

of-way for irrigation purposes while the land remains unsurveyed, and it does not seem reasonable with the law and regulations above referred to providing for such right-of-way for irrigation purposes, that such approval and permission should be granted by the Secretary of the Interior as a condition precedent to the construction of irrigation enterprises upon unsurveyed lands, when the granting of such approval was impossible under the law. If such view is to obtain, an irrigation system could not be established even upon surveyed lands in the event that the line of ditch or canal traversed any portion of the unsurveyed public domain.

It would appear as a serious step backward to now hold that such irrigation systems could not be constructed and rights-of-way acquired upon unsurveyed land, without first seeking the consent of the Secretary of the Interior, thus involving long and tedious delays, which in such case would be absolutely unavoidable under the law. This consent would, of course, be necessary in cases of parks and reservations where permanent rights cannot be acquired, but only a license granted by the government; but it was never intended to apply to the open, unsurveyed public lands which will eventually be settled upon and improved.

The allegation of the complaint as to the intervening rights of settlers upon some of the public lands over which said ditches are, or may be, constructed, it is not necessary here to consider, for the reason that this action is brought by the United States and not by settlers who may or may not be injuriously affected by the construction of the canals and ditches involved in this litigation. Furthermore, there is a provision of law for the adjudication of the rights of settlers on the public lands of the United States when the same are injuriously affected by the construction of irrigation systems, Sec. 19 Act of Congress above quoted, and in a proper case damages may be awarded, but such damages could not, in any event, be awarded in this proceeding. The sole question here is the right of the government to enjoin the defendants from going upon unsurveyed public lands and taking possession of them

for the purpose of acquiring a right-of-way over the un-
surveyed public lands of the United States for irrigation
purposes, without first filing maps and obtaining the ap-
proval and permission of the Secretary of the Interior so
to do.

We are of the opinion that injunction will not lie
against the defendants under these circumstances, as the
lands involved are unsurveyed lands of the United
States as to which the Secretary of the Interior would
be required by law to decline either to grant such
right-of-way or to approve of, the construction of such
ditches, etc., if such maps were filed in his office.

There being no error in the rendition of the decree of
dismissal in the court below, the decree is affirmed with
costs. It is so ordered.

Chief Justice Pope, Frank W. Parker, Justice, John
R. McFie, Justice, Ira A. Abbott, Justice, are the only
members of the court as now constituted who heard this
case.

### DISSENTING OPINION.

ABBOTT, J., (Dissenting).—By the statute of Feb-
ruary 15, 1901, 6 Fed. Stat. Ann. 513, Congress must, in
my opinion, have intended to provide a complete system
of governing the acquisition of rights-of-way over the pub-
lic domain, for the several purposes specified in the act,
and to supersede the system established by Act of Con-
gress of March 3, 1891, 6 Fed. Stat. Ann. pp. 508, 509,
510, relating to irrigation only, under which the defend-
ant claims.

The earlier act provides:

"That the right-of-way through the public lands and
reservations of the United States, is hereby granted to any
canal or ditch company, formed for the purpose of irriga-
tion, and duly organized under the laws of any state or
territory, * * * * to the extent of the ground occupied by
the water of the reservoir and of the canal, and its laterals
and fifty feet on each side of the marginal limits thereof,
also the right to take from the public lands adjacent to

the line of the canal or ditch material, earth and stone, necessary for the construction of such canal or ditch."

The right thus obtained was a permanent easement; a property right in a strip of the public domain, of the width named and of indefinite length, with the right to take materials outside of it; all without obtaining the permission of any officer of the United States, or making any payment to the United States.

The later statute allows the granting of revocable licenses, only, by the Secretary of the Interior, permitting the use of rights-of-way through the public lands, forest and other reservations of the United States, and the Yosemite, Sequoia and General Grant National Parks, not only for "canals, ditches, pipes and pipe lines, flumes, tunnels or other water conduits, and for water plants, dams and reservoirs, used to promote irrigation," but for the various other uses which had come into being or assumed prominence since the statute of 1891 was enacted, some of which had been recognized by intervening enactments of Congress.

The consent of the Secretary of the Interior is a prerequisite to the acquisition of rights under it, and to him is given the power to revoke such a license in his discretion.

That provision, in my opinion, registers the change which had taken place in the public attitude, in the ten years which had elapsed since the enactment of the earlier statute on the question of conserving the natural resources of the country for the public, instead of allowing them to be appropriated at will for private gain.

It seems a thing incredible, that Congress so late as 1901, in making a law covering the subject, should have intended to leave the public lands of the United States open to the acquisiton of permanent easements, of such extent and probable value, as those obtainable under the earlier statute, without the payment of a dollar to the United States and without the consent, even against the objection, of its officers.

The canons of statutory construction do not require us to adopt a view so contrary to the well known policy of

the United States government, but, instead, as it seems to me, to hold that the later statute, in the language of Judge Shipman, in Kent v. United States, adopted by Mr. Chief Justice Fuller, in United States v. Ranlett and Stone, 172 U. S. 133, "is a complete revision of the subject to which the earlier statute related, and the new legislation is manifestly intended as a substitute for the former legislation, and the prior act must be held to have been repealed."

The fact that between 1891 and 1901, namely, in 1895, 6 Fed. Stat. Ann. 510; 1896, 6 Fed. Stat. Ann. 510-511; and 1898, 6 Fed. Stat. Ann. 512, statutes were enacted partially covering some of the subjects grouped in the statute of 1901, including an amendment of the statute of 1891, under consideration, is to my mind, an additional reason for holding that the statute of 1901 was meant to take the place of all those earlier statutes. See Sutherland Stat. Con. 2 ed., pp. 461, 463, 472, 473; United States v. Tynen, 11 Wallace 88; United States v. Ranlett, 172 U. S. 133-140; United States v. Claflin, 97 U. S. 546; Com. v. Mann, 168 Pa. St. 290; Roche v. Jersey City, 40 N. J. 257; ex parte Joffee, 46 Mo. App. 360-365.