UNITED STATES v. HENRYLYN IRR. CO. et al.

(District Court, D. Colorado. November 25, 1912.)

No. 5,791.

1. WOODS AND FORESTS (§ 8*)—NATIONAL FOREST RESERVATIONS—RIGHTS OF
WAY FOR IRRIGATION PROJECTS.

A right of way for an irrigation project cannot be acquired over a
national forest reservation without the approval of the proper executive
officers of the government; nor can any occupancy or use thereof by
private parties, save upon the exercise of a discretion by the proper de-
partment as to whether such use will interfere with the purpose of the
reserve.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

2. WOODS AND FORESTS (§ 8*)—NATIONAL FOREST RESERVATION—INJUNCTION
AGAINST UNAUTHORIZED USE.

The United States may maintain a suit to enjoin the unauthorized
construction of irrigation canals and tunnels within a national forest
reservation.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

3. WOODS AND FORESTS (§ 8*)—NATIONAL FOREST RESERVATIONS—INJUNCTION
AGAINST UNAUTHORIZED USE.

The right to such an injunction is not affected by the fact that the
Secretary of the Interior may have improperly delayed or refused to act
on an application made for right of way through the reservation for such
canals and tunnels.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

In Equity. Suit by the United States against the Henrylyn Irriga-
tion Company, the Inter-Mountain Water Company, and J. A. Mc-
Ilwee. On demurrer to bill. Overruled.

Harry E. Kelly, U. S. Dist. Atty.

Thomas & Thomas and John R. Smith, all of Denver, Colo., and
Charles F. Tew, of Greeley, Colo., for defendants.

POPE, District Judge. The government's bill shows a case wherein
defendants are proceeding to construct canals and tunnels for an irri-
gation project over the public domain as contained in the Arapahoe
and Pike National Forest Reserves in the state of Colorado. Proceed-
ing principally upon the ground that no right of way has been as yet
approved for the enterprise, either by the Secretary of Agriculture or
the Secretary of the Interior, an injunction is sought to prevent any
further entry upon or prosecution of the work over the two reserves
named. The bill shows that applications for the right of way were
presented to the Interior Department some two years since, but that
no action has been taken thereon. In explanation of the failure of
the Secretary of the Interior to act, the bill contains the following aver-
ments:

"Plaintiff avers that the validity of the claim of water rights made as
aforesaid by the water company and irrigation district, and particularly their
claim of right to divert water away from the watershed of the said Grand
river and to apply, use, and consume the same east of said Continental Di-
vide, in the watershed of the South Platte river, and particularly their claim

of right to appropriate and use as much as 700 cubic feet per second of the water flowing in said tributaries of Williams fork, with a priority dating from the 15th day of May, 1902 (which date plaintiff avers is the date to which they assert their said alleged or pretended water right will relate when perfected by the application of the water so claimed by them), are matters which now and ever since a time prior to the filing of said application have been in issue in a certain action pending in the district court of the First district of the state of Colorado, wherein the Grand Valley Irrigation Company and numerous other corporate and individual claimants of rights to the use of waters from the said Grand river and its tributaries are plaintiffs and the water company and others are defendants; that a number of other applications for rights of way across national forests for the diversion of water flowing in tributaries of the said Grand river and contemplating and intending the use of all such water at places remote from the valley and watershed of said Grand river have been filed and are now pending in the General Land Office, and others, as plaintiff is informed and believes, are about to be there filed in the near future; that the aggregate quantity of water which the said several existing and prospective applicants claim rights to divert and use, as aforesaid, is so large, and the several priorities conditionally claimed by said several and prospective applicants are of such dates, that if all such claims were sustained and upheld as legally and lawfully made, and water were diverted and applied as aforesaid in accordance therewith, the result, in all probability, would be to diminish the supply of water flowing in the said Grand river to such an extent as to work great injury and deprivation to numerous water claimants and water users who claim rights to use the water of the said river and its tributaries for the irrigation of lands situate within the valley of the said river, and assert and believe that their rights in that behalf are superior in law and prior in time to the rights claimed by the said defendants and other actual and prospective applicants for such rights of way; that among the persons so injured and deprived would be the numerous water users under the Grand Valley reclamation project— a project duly approved under and in pursuance of the act of June 17, 1902, commonly called the Reclamation Act, in behalf of which project the plaintiff claims to have appropriated 1,200 cubic feet per second of the water of the said Grand river as of July, 1902. Said project involves and demands the construction at great expense of divers canals and other waterworks, is now in course of execution, and will, upon the completion of said canals and waterworks, bring under irrigation upward of 53,000 acres of fertile land lying within the valley of the said Grand river, and requiring for their proper irrigation and cultivation the full quantity of water which the plaintiff so claims to have appropriated under and on behalf of said project.

"On or about February 3, 1911, the Secretary of the Interior, in view of the number of said actual and prospective applications for rights of way, the large quantities of water proposed to be thereby diverted, as aforesaid, the pendency of the said litigation, and the serious issues therein involved, as aforesaid, and being apprehensive lest the approval of such actual and prospective applications (including the said application of the said irrigation district), by him might result in the wrongful and unlawful diversion away from the watershed of the said Grand river, in violation of just and prior rights of the plaintiff and the said water users under said reclamation project, of large quantities of water essential to the success of said project and to the proper irrigation of the lands of said water users thereunder, and to the end that he might cause further and more exhaustive inquiry to be made than has heretofore been made into and concerning the water run-off within said watershed, the nature and extent and validity or invalidity of the several claims of water rights made by the said defendants and other said applicants and prospective applicants for rights of way, and the aggregate quantity of water likely to be diverted by all such applicants and prospective applicants, should their applications be approved, ordered and directed the Commissioner of the General Land Office not to submit to him, the said Secretary of the Interior, for approval or disapproval, any of such applications until he, the said Secretary, had made such further inquiry and gained such fuller information as

would enable him to pass upon the same and each thereof with due regard to the rights of all persons so applying, as well as the public interests, and particularly the rights of the plaintiff and the said water users under the said reclamation project.

"The said order and direction is still in full force and effect, and by reason thereof the said application of the irrigation district has not as yet been presented to the Secretary of the Interior for approval or disapproval. Plaintiff, however, avers that the irrigation district has especially petitioned the Secretary of the Interior directly for a modification in its behalf of his said order and direction of February 3, 1911, to the end that its said application for right of way may be relieved from said order and direction and be now considered upon its merits, and has made arguments and filed briefs in support of the said petition, and that the said petition is now pending before and under consideration by the said Secretary, but has not as yet been granted, denied, or otherwise acted upon by him."

The demurrer challenges the sufficiency of the government's case as stated to justify an injunction. The argument and the briefs disclose the following contentions:

First. Is the approval of the executive branch of the government necessary to acquiring a right of way over a forest reserve?

Second. Is injunction the proper method to arrest the creation without such executive approval of a tunnel and irrigation canals for irrigation purposes over such a reserve?

Third. Does the improper delay or refusal of the executive officer charged with approving such application for a right of way to consider such application justify the prosecution of the work without such approval, or, what is the same in practical results, does it preclude the maintenance of a bill in equity to prevent such building in advance of approval?

These questions may be briefly answered:

[1] 1. As to the first, it seems evident from the course of legislation affecting forest reserves that executive approval is necessary to the creation of irrigation enterprises thereon. Indeed, defendants tacitly admit this, in that they have applied for such approval. It does not seem necessary to quote or review in detail the various acts which converge to this result. Beginning with the act of March 3, 1891 (26 Stat. 1095, c. 561 [U. S. Comp. St. 1901, p. 1535]), and extending to that of February 1, 1905 (33 Stat. 628, c. 288 [U. S. Comp. St. Supp. 1911, p. 635]), the legislative intent is manifest that as to these reserves, created as they are for a special purpose, no occupancy nor use thereof by private parties shall be permitted save upon the exercise of a discretion by the proper departments as to whether such use will interfere with the purposes of such reserve. U. S. v. Lee, 15 N. M. 382, 110 Pac. 607.

[2] 2. Nor do we see any reason why injunction is not available to the government as a remedy, rather than the slow process of a suit at law to eject. The wrong is in the process of the doing. If it tends to a burden upon the estate, the arrestive hand of equity may be invoked to prevent its consummation. We believe that no court would deny equitable relief to a private owner who came in alleging that his realty was, without his consent, about to be burdened by another with a system of canals and tunnels. If a private owner might ask this, it would seem even more clear that the government may do so. It is

not only the owner, but the sovereign. U. S. v. Cattle Co. (C. C.) 33 Fed. 323, 330.

[3] 3. It is said, however, that the bill discloses that the consideration of defendants' application for a right of way is being postponed in the interest of the Grand river reclamation project, a government enterprise, and that the delay by the Secretary of the Interior is in order that defendants may lose their status as appropriators under the Colorado law, and that their rights, now superior to that of the Grand river project, may by delay be rendered junior thereto. It is said that the government is thus a party to—indeed, the perpetrator of— a fraud, does not come into court with clean hands, and is thus precluded from any relief. But we do not understand that the doctrine asserted can debar the government from relief for an invasion of its proprietary rights. As sovereign it can in legal contemplation do no wrong. This being a government of law, the acts of its officers cease to be its acts when they become unlawful. If such officers omit a duty, the courts are open to require them by mandamus to perform it. In the present instance, if the Secretary of the Interior has improperly omitted to exercise a discretion, he may be required to proceed to its exercise. But that is a very different matter from that here contended for. It seems to be here insisted that, because he has failed to act, therefore the court should in effect act for him; that, because he has not exercised a discretion imposed by law, therefore the court should itself exercise that discretion. We cannot, however, accede to any such view. A court cannot thus be called upon to exercise a discretion reposed in another branch of the government. It is true that, if defendants' position be sustained, this result will be reached simply by the court's nonaction rather than affirmatively. But the result is the same. In either event it will be to deny the government the right to control the manner in which its domain, created into forest reserves, shall be used—a right in my judgment reserved to it by law. If this method of administering the public domain be obstructive to public enterprise or oppressive to the citizen, the remedy is elsewhere than in the courts, and must be sought from Congress. It has, of course, not been deemed necessary to the present case to intimate, much less decide, how far, if at all, the delay complained of has been unwarranted by law and a proper discharge of duty by the Secretary of the Interior, nor does the present case call for any consideration of the momentous question, somewhat discussed in the briefs, of the title of the state as against the general government to the unappropriated waters within its borders.

The demurrer will be overruled, the defendants to answer within 30 days.