### UNITED STATES v. RICKEY LAND & CATTLE CO. et al.

(Circuit Court, N. D. California. June 26, 1908.)

No. 13,950.

1. INJUNCTION (§ 49*)—GROUNDS—FLOODING LANDS.
   Including the land of another in a reservoir basin and flooding the same constitutes a permanent obstruction to its use by the owner, which entitles him to an injunction.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 102; Dec. Dig. § 49.*]

2. WATERS AND WATER COURSES (§ 18*)—PUBLIC LANDS—WATER RIGHTS—RIGHT OF WAY FOR CANAL OR RESERVOIR.
   Vested rights in public lands to right of way for ditches, canals, or reservoirs for water purposes, under Rev. St. §§ 2339, 2340 (U. S. Comp. St. 1901, p. 1437), are not acquired until the actual completion of the work, so that the water can be applied to beneficial use.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 10; Dec. Dig. § 18.*]

3. WATERS AND WATER COURSES (§ 12*)—PUBLIC LANDS—WATER RIGHTS—APPROVAL.
   Under Act March 3, 1891, c. 561, §§ 18, 19, 26 Stat. 1101, 1102 (U. S. Comp. St. 1901, pp. 1570, 1571), granting right of way for irrigating canals, ditches, and reservoirs over the public lands to irrigation companies, upon the filing of a map thereof and its approval by the Secretary of the Interior, such approval is essential, and where it was refused as to a reservoir because the site had been previously withdrawn from sale or entry and reserved by the United States, the company acquired no right or easement by the filing of its maps.
   [Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 12.*]

4. WATERS AND WATER COURSES (§ 26*)—PUBLIC LANDS—WATER RIGHTS—RIGHT OF WAY FOR IRRIGATION.
   An appropriation of water, duly made and maintained under the laws of California, gives no right of way over the public lands of the United States for a reservoir or canal to use the water. The withdrawal of the land after the appropriation and before the filing of an application for such right of way for irrigation purposes under Act March 3, 1891, c. 561, §§ 18, 19, 26 Stat. 1101, 1102 (U. S. Comp. St. 1901, pp. 1570, 1571), defeats such subsequent filing.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 17; Dec. Dig. § 26.*]

In Equity. On motion for preliminary injunction.

Robt. T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty. Peck & Boynton, for defendants.

DE HAVEN, District Judge. The questions to be decided at this time are presented by the demurrer of the defendants to the bill of complaint, and by the application of the complainant for an injunc-

tion pendente lite and the affidavits and documentary evidence used upon the hearing of that application. The bill alleges, in substance, that the United States is the owner of certain described lands, which are a part of a natural basin, including what is known as "Alkali Lake"; that said lands have been withdrawn from entry and reserved by the Secretary of the Interior for reservoir purposes, in accordance with the laws of the United States; that the defendants are constructing and have constructed three canals or ditches by which they take water from the West fork of Walker river and conduct it upon said lands and overflow the same; that defendants claim an easement therein for reservoir purposes, and the right to flood and overflow them; and that said claim is without right. It is further alleged that by flooding the same the defendants will wholly exclude the plaintiff from the use thereof and destroy the value of said lands to the plaintiff. The prayer of the bill is that the claim of defendants to an easement in said lands be adjudged without merit, and that they be restrained from flooding and using the same as a reservoir site. The defendants have demurred to the bill upon the ground that it does not state facts entitling the complainant to the relief sought for, or to any relief.

1. The demurrer must be overruled. The flooding of the lands by the defendants, in the manner alleged in the bill, would be a permanent and continuing obstruction to the free use by the complainant of its property, and this is a wrong which a court of equity will prevent by its writ of injunction. Learned v. Castle, 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; United States Freehold L. E. Co. v. Gallehos, 89 Fed. 769, 32 C. C. A. 470.

2. Passing to the question of the right of complainant to an injunction pending the final hearing and decree, it may be said that the affidavits and documents introduced in evidence upon the hearing of the application for such injunction show that all of the lands described in the bill, except lot 2, in section 35, township 10 N., range 22 E., containing 8.57 acres, are public lands of the United States, and that if defendants are permitted to subject them to use as a part of the reservoir site claimed by them, and in the manner which they contemplate, said lands will be constantly under water and the complainant excluded from any use thereof. These facts entitle the complainant to the preliminary injunction sought, unless, as claimed by the defendants, the defendant Rickey Land & Cattle Company has an easement in the lands described in the bill, entitling it to use the same as a reservoir site.

It appears that the defendant Rickey caused, in the year 1881, a survey to be made of a reservoir site within the limits of which are situated the lands described in the bill, and also caused monuments and stakes to be set so as to mark the boundaries of such reservoir site, and thereafter purchased the Swauger and Wiley ditches, leading from the West fork of Walker river, together with the water rights appertaining to such ditches, and thereafter, and before August, 1902, extended these ditches, and also another ditch owned by him, and known as the Rickey ditch, so as to discharge the water carried by them on the lands lying within the basin in which said reservoir site

is situated. These ditches were not originally constructed for the purpose of taking water from the West fork of Walker river and irrigating lands within the reservoir basin, or storing the same within the limits of the reservoir site, but were constructed for the purpose of irrigating lands outside of said basin. The cost of enlarging and extending these ditches exceeded the sum of $15,000.

The defendant Rickey Land & Cattle Company is a corporation which was duly organized under the laws of the state of Nevada July 25, 1902, and is a ditch and canal company formed for the purpose of irrigating lands, and on August 6, 1902, the defendant Rickey conveyed to it all his right, title, and interest in said reservoir site, and the ditches and canals leading thereto, and the water rights appertaining to such ditches, and all lands owned by him forming part of said reservoir site and lying adjacent thereto. The practical use of said reservoir requires that water impounded therein shall be conducted from the reservoir into the West fork of Walker river, and distributed from said West fork in ditches taken out of that stream below the point where the water from the reservoir is discharged into said river, and in order to make any beneficial use of the water impounded in said reservoir by the distribution thereof, the reservoir must have an outlet or ditch conveying the water onto the land requiring irrigation lying below the reservoir. This outlet has not yet been constructed, although it appears from the affidavit of the defendant Rickey that it is the intention of the defendant corporation to construct such outlet and that work thereon has been commenced.

Upon September 11, 1902, the defendant corporation duly posted and recorded in the office of the county recorder of Mono county, state of California, a notice to the effect that it appropriated all the waters of the West fork of Walker river flowing in said stream from the 1st day of October of each year to the 1st day of April of the following year, to the extent of 50,000 inches or more, measured under a 4-inch pressure, and all the surplus and unappropriated waters flowing in that stream from the 1st day of April to the 1st of October of each year, amounting to 50,000 inches or more, measured under a like pressure of 4 inches, and further stating that the purpose for which said water was claimed and appropriated was to store the same in a reservoir, and to use, sell, and distribute the same for domestic, irrigation, mechanical, and power purposes, and that the reservoir in which said water was to be stored is that certain lake known as "Alkali Lake," situated in Antelope Valley, and in Douglas county, Nev., and Mono county, Cal., being the same reservoir site in controversy here. The defendant corporation also, on September 11, 1903, caused to be recorded in the county recorder's office of the county of Mono, Cal., and in the office of the recorder of Douglas county, Nev., a notice of the location by it of said reservoir. Said notices were also posted upon the margin of the reservoir so located.

On the 19th of December, 1902, the defendant corporation filed with the register of the United States land office, in the proper land district in California, and on January 10, 1903, also filed with the register of the United States land office at Carson, in the state of Nevada, a map of the reservoir site in controversy, showing the canals and ditches

leading thereto, and also showing the proposed line of the tunnel and canal leading from the reservoir through and over the land lying below said reservoir site—that is to say, the proposed line of the tunnel and canal through which the water impounded in said reservoir is to be discharged—and also filed with said registers certified copies of its articles of incorporation, and also proof of its organization under said articles, and the maps and documents so filed with said registers were by them forwarded to the Commissioner of the General Land Office; and the said application by the defendant corporation for right of way for said reservoir was rejected by said Commissioner, February 20, 1907, and his action was affirmed by the Secretary of the Interior on October 11, 1907. It appears, further, that the lands described in the complaint were withdrawn from sale and reserved by the Secretary of the Interior of the United States for reservoir purposes on September 13, 1902.

The foregoing is a sufficient statement of the material facts shown by the affidavits and documentary evidence introduced upon the hearing of the application for an injunction pendente lite, and upon these facts the defendants claim that prior to their withdrawal from entry and reservation, September 13, 1902, the Rickey Land & Cattle Company acquired title to an easement in the lands described in the bill of complaint for a reservoir site, under sections 2339 and 2340 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1437), and also under the provisions of sections 18 and 19, of the act entitled "An act to repeal timber-culture laws, and for other purposes" (Act March 3, 1891, c. 561, 26 Stat. 1101, 1102 [U. S. Comp. St. 1901, pp. 1570, 1571]). Sections 2339 and 2340 of the Revised Statutes (U. S. Comp. St. 1901, p. 1437), so far as necessary to be here stated, are as follows:

"Sec. 2339. Whenever, by priority of possession, rights to the use of water for mining, agriculture, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. * * *

"Sec. 2340. All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights of ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section."

It is very clear that no one can under these sections acquire as against the government a vested easement in and to public lands for a reservoir site until the actual completion of the reservoir, so that the waters to be impounded therein could be applied to the beneficial uses contemplated by the irrigation system of which it forms a part. This was the construction placed upon these sections by the Supreme Court in Bear Lake Irrigation Co. v. Garland, 164 U. S. 1, 18, 19, 17 Sup. Ct. 7, 12, 41 L. Ed. 327, in which case it was said:

"It is the doing of the work, the completion of the well, or the digging of the ditch, within a reasonable time from the taking of possession, that gives the right to use the water in the well or the right of way for the ditches or the canal upon or through the public land. Until the completion of this work, or, in other words, until the performance of the condition upon which the

right to forever maintain possession is based, the person taking possession has no title, legal or equitable, as against the government."

Now the reservoir site, claimed by the defendants, is a natural basin at the base of a spur of the Sierra Nevada Mountains, and the lands described in the bill were withdrawn from entry and reserved on September 13, 1902; but at that date, and, indeed, when this action was commenced, no outlet to this natural basin had been completed, nor any ditch or canal constructed for the distribution of waters upon the lands intended to be irrigated from waters impounded in such reservoir. The reservoir was therefore not completed at the time the lands were withdrawn from entry, as, without an outlet, water which might be impounded therein could not be applied to any beneficial use.

3. The defendants further claim that the Rickey Land & Cattle Company acquired the right to occupy the lands in controversy as a reservoir site under sections 18 and 19 of the act entitled "An act to repeal timber-culture laws, and for other purposes" (Act March 3, 1901, c. 561, 26 Stat. 1101, 1102 [U. S. Comp. St. 1901, p. 1437]), by filing with the register of the land office in the district in which such land is located a map of its canals and ditches and reservoir. Section 18 of the act referred to provides:

"That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation, and duly organized under the laws of any state or territory, which shall have filed or may hereafter file with the Secretary of the Interior, a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals and fifty feet on each side of the marginal limits thereof. * * *"

Section 19 of the same act is as follows:

"That any canal or ditch company desiring to secure the benefits of this act shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way. * * *"

It will be seen that by the express terms of this section, in order to acquire a right of way over public lands for canal and reservoir purposes under the act of which it forms a part, it is essential that the map of the location of the canal and the reservoir shall be approved by the Secretary of the Interior. Such approval is a condition precedent to the taking effect of the grant of right of way for the purposes named in the preceding section of the act. Nippel v. Forker, 26 Colo. 74, 56 Pac. 577. This being so, it must be held that the Rickey Land & Cattle Company has not acquired any easement in the lands in controversy for a reservoir site under sections 18 and 19 of the act above referred to; the Secretary of the Interior having refused to approve the map of the location thereof filed by that company.

The application of the complainant for an injunction during the pendency of the action, restraining the defendants from using the lands

described in the bill of complaint as a reservoir, or part of a reservoir, for the storage of water for distribution, will be granted; such injunction, however, not to interfere with the right of defendants to irrigate any lands now irrigated by water carried in the ditches referred to in the bill of complaint, or to irrigate any lands capable of irrigation by water carried in such ditches.

The demurrer to the bill of complaint is overruled; the defendants to have until the first Monday of August, 1908, to answer.