## BARLOW v. NORTHERN PACIFIC RAILWAY COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 257.　Argued March 3, 1916.—Decided April 3, 1916.

Under the Right of Way Act of March 3, 1875, c. 152, 18 Stat. 482, the rights of a railroad company entitled to the benefit of the act are paramount over those of a homestead entryman holding a patent of the United States in consequence of rights initiated after the line was in course of construction, but before the map of the right of way had been filed in local land office. *Jamestown & Northern R. R.* v. *Jones*, 177 U. S. 125, followed and *Minn., St. Paul &c. Ry.* v. *Doughty*, 208 U. S. 251, distinguished.

26 N. Dak. 159, affirmed.

THE facts, which involve the rights of a railroad company under the Right of Way Act of 1875 and of an entryman under the Homestead Act, are stated in the opinion.

*Mr. S. E. Ellsworth*, with whom *Mr. John Knauf* was on the brief, for plaintiff in error.

*Mr. Charles Donnelly*, with whom *Mr. Charles W. Bunn* and *Mr. Emerson Hadley* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In *Jamestown & Northern R. R.* v. *Jones*, 177 U. S. 125, there came under consideration the construction of the act of Congress of March 3, 1875, entitled "An act granting to railroads the right of way through the public lands

. of the United States," c. 152, 18 Stat. 482. The case involved a controversy between the railroad which was entitled to the benefit of the act and Jones, a homestead entryman holding a patent of the United States in consequence of rights \initiated after the railroad had constructed its line but before it had filed a map of its right - of way in the appropriate local land office. The railroad claimed that its right of way across the land covered by Jones' patent was paramount and Jones asserted that his right under the patent was dominant. Giving sanction to a previous course of administrative construction dealing with unsurveyed public land, it was held that an appropriation of the right of way by a construction of the road under the statute gave the railroad the paramount right and that the provision of the statute concerning the filing of a map and profile in the local land office was intended not to deprive of the power to fix and secure the right of way by construction in advance of filing such map and profile, but simply to afford the means of securing the right of way in advance of construction. The two methods of securing the right, the one by construction of the road, and the other in anticipation of construction by filing a map, were decided to in no wise conflict the one with the other as both afforded a means of securing the right which the statute gave. The opinion pointed out that although the previous administrative rulings were concerned only with unsurveyed lands, they were equally applicable under the statute to surveyed lands, and it was thus concluded, p. 132: "It follows from these views that the grant to plaintiff in error (the railroad company) by the act of 1875 became definitely fixed by the actual construction of its road, and that the entry of the defendant in error (Jones) was subject thereto."

In *Minneapolis, St. Paul, &c. Ry.* v. *Doughty*, 208 U. S. 251, the controversy was between the Railway Company and a settler holding a patent of the United

States whose right had been initiated before the construction of the railroad but after a preliminary survey which had been made by the railroad as a means of ultimately determining upon what line it would build its road, the stakes of such survey being, at the time the settler initiated his right, across the land in question. The claim of the settler was that a mere entry of the railroad for the purpose stated was not a construction within the meaning of the *Jones Case*, while that of the railroad was "that an entry upon the land to locate the road is as necessary as an entry on the land to build the road, and, being there, the railroad could not become a trespasser, either as to the government or as to the plaintiff." It was decided that as a mere preliminary step for the purpose of determining where the road should be located was not in and of itself the equivalent of a definite location of the line and a permanent appropriation of the right of way, the case was not covered by the rule of the *Jones Case* and the right of the settler was paramount.

Which of these rulings is here controlling is the single question arising for decision on this record, as will be at once seen by the following statement of the case:

The suit was commenced by the railroad to quiet its title to its right of way across a quarter-section of land which had been patented by the United States to the defendant. The latter not only by answer, but by counterclaim asserted the paramount nature of his right. The court below, affirming the action of the trial court, held that the rights of the railroad were paramount upon the conclusion that the facts found clearly brought the case within the rule established in the *Jones Case*. (26 N. Dak. 159.) The facts as thus established were these, p. 161:

"On the said 22d day of July A. D. 1883, intending to make entry of the said land therein described when the same was surveyed, and to acquire title to the same by

virtue of the compliance with the preëmption laws of the United States, said Frederick G. Barlow [the predecessor in title of the plaintiff in error] settled upon said land and took up his residence thereon. At the time of such settlement there was not a railroad track or line of railroad in operation across said land at any place, nor had plat or profile of the section of railroad extending across such land hereinbefore referred to been filed in the United States District Land Office at Fargo. We find from the evidence that, although Barlow entered upon the land upon the 22d day of July, A. D. 1883, the grading of the road across said land was completed prior to May 31st, 1883; that is to say, nearly two months before his settlement. We also find the rails were laid upon the grade between August 10th and 15th, 1883, and that trains were operated on said road and across said land soon after."

That under these facts the court below was right in holding that the controversy was foreclosed by the ruling in the *Jones Case* we think is too clear for anything but statement. The contention that the case is controlled by the *Doughty* and not the *Jones Case* because the road was not complete and operating when the entryman initiated his rights although it was then graded and was virtually ready for the ties and rails, if acceded to, would render the statute inefficacious and dominate the substance of things by the mere shadow. The first, because as it is impossible to conceive of the completion of the road by the placing of ties and the laying of rails without presupposing the prior doing of the work of grading, it would follow that the recognition of the right of an entryman to appropriate adversely to the railroad after the grading had been done and before the laying of the ties and rails would render the performance of the latter useless and would deprive the railroad therefore of all practical power to appropriate. The second, because as pointed out in *Stalker* v. *Oregon*

*Short Line*, 225 U. S. 142, the decision in the *Jones Case* rested not upon the ground that the work of construction had reached the absolutely completed stage so as to enable the road to be operated, but on the fact that the work was of such a character as to manifest that the railroad company had exercised its judgment as to where its line was to be established and had done such work of construction as "necessarily fixes the position of the route and consummates the purpose for which the grant of a right of way is given" (p. 150). And it is obvious that this standard when complied with would serve not only to demonstrate the fixed intention of the railroad to appropriate, but also to give tangible and indubitable evidence to others of the right of way appropriated, thus preventing injury to innocent persons which might result from their selection of land in ignorance of the fact of its prior appropriation. The distinction between the doctrine of the *Jones Case* and that of the *Doughty Case* is therefore that which necessarily must obtain between permanent work of construction of a railroad on a line definitely selected and fixed by it, and mere tentative work of surveying done by a railroad for the purpose of enabling the line which it was proposed to construct to be ultimately selected. The broad distinction between this case and the *Doughty Case* both as to the fundamental rights given by the statute and the protection to innocent parties was thus lucidly pointed out by the court below in its opinion:

"There can be no doubt, indeed, that the route was fixed, both on account of the physical construction and the difficulty of a subsequent removal, . . . . The entryman in this case can have no more ground for complaint than could the entryman in the case of *Stalker* v. *Oregon Short Line, supra.* It would be absurd to hold that one who enters upon land and sees upon it a railroad grade which is only 18 days from physical completion, and, as we have a right to believe, but a link in miles of

road stretching across the same prairie, was not aware of this prior railroad occupation."

We have not stopped to consider an intimation contained in the argument that the court erred in its finding of fact as to the state of construction of the road at the time the entry by Barlow was made, because without at all questioning our power to review the facts in so far as necessary to dispose of the Federal contention, we consider the suggestion wholly without merit, first, because we would not in any event disregard the finding of fact of the court below except upon conviction of clear error committed, for which the record here affords no ground whatever; and second, because as the finding of the court below was also the finding of the trial court, the request invites us to disregard the findings of both courts on a matter of fact in the absence of any ground for a conviction that error of fact was clearly committed.

*Affirmed.*