**Stephen and Jean ROTH, husband and wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 02–44–M–LBE.**

United States District Court,
D. Montana,
Missoula Division.

Dec. 12, 2003.

**1164**

Ward A. Shanahan, Gough Shanahan Johnson & Waterman, Helena, Mt, S. Amanda Koehler, Mountain States Legal Foundation, Lakewood, CO, for plaintiff.

Kris A. McLean, Office of U.S. Atty., Missoula, MT, for defendant.

ORDER

ERICKSON, United States Magistrate Judge.

In March 2002, Stephen and Jean Roth (Plaintiffs) commenced this action under the Quiet Title Act, 28 U.S.C. § 2409a, seeking to quiet title to several easements over federal land. The parties have filed cross-motions for summary judgment, which are now fully briefed. Having reviewed those briefs and the materials of record, and considered argument of counsel,

IT IS ORDERED that:

1. Plaintiffs' motion for partial summary judgment [Doc. # 29] is granted. Specifically, Plaintiffs' motion is granted with respect to their claim that they possess an easement under the Act of 1866 for the Long, Long–Conner, and Meathrel ditches. Plaintiffs' motion is also granted as to their claim that they possess an easement under the Act of 1891 for the Tamarack Lake dam and reservoir.

2. Defendant's cross-motion for summary judgment [Doc. # 30] is denied.

### RATIONALE

#### A. Background

The facts in this case are largely undisputed. In 1988, Plaintiffs purchased approximately 750 acres in Ravalli County, Montana, from Thomas and Lynn Campion. Pls.' State. Uncontroverted Facts, ¶ 1 (Mar. 10, 2003). In early 1990, Plaintiffs purchased 50 adjacent acres from Clifford James Valenzo. *Id.*, ¶ 2. Each purchase included all water and water rights, ditches and ditch rights, canals, dams, and reservoirs appurtenant to and used in conjunction with the property. *Id.*, ¶¶ 1, 2. Together, these properties form the Trapper Creek Ranch. *Id.*, ¶ 3.

The water rights that Plaintiffs purchased are decreed water rights under Montana law and allow Plaintiffs to divert water from Chaffin Creek into four water

conveyance facilities known as the Long–Ditch, Long–Conner Ditch A, Long–Conner Ditch B, and the Meathrel Ditch. *Id.* ¶¶ 49, 51, 55. According to Plaintiffs, their water rights also allow them to store water in the Tamarack Lake dam and reservoir. *Id.* ¶ 65. According to Defendant, however, "[n]o document has been identified granting a right to the waters of Tamarack Lake." Def.'s State. of Genuine Issues, ¶ 1 (Apr. 11, 2003). Defendant maintains that "[t]he dam and reservoir have always been, and remain, authorized by means of a [special use] permit issued by the U.S. Forest Service." Def.'s Memo in Response, at 6 (Apr. 11, 2003). Defendant argues that any right to use the water derives from that permit.

The four irrigation ditches are located on land owned by the United States and reserved by Congress in 1897 as the Bitterroot National Forest. Pls.' State. Uncontroverted Facts, ¶¶ 50, 62–64. The Tamarack Lake dam and reservoir are located on unsurveyed land reserved by Congress in 1897 as National Forest, and set aside as Wilderness in 1964. *Id.*, ¶¶ 66, 67.

Plaintiffs' predecessor in interest constructed the Tamarack Lake dam and reservoir in accordance with the terms of a special use permit issued by the United States Forest Service after reservation of the land as National Forest. According to the Government, "[t]he dam has been authorized under discretionary permits from the United States for over 80 years." Def.'s Memo in Response, at 3.

The Plaintiffs store water in the Tamarack Lake Dam and Reservoir and release it late in the season for transportation via Chaffin Creek to the four ditches, where it is diverted for use on the Trapper Peak Ranch. Pls.' State. Uncontroverted Facts, ¶ 74. Before Plaintiffs purchased the Campion and Valenzo properties, they "specifically negotiated for the purchase of easements on Tamarack Lake dam and reservoir and four water conveyance facilities to accompany the water rights appurtenant to the Trapper Peak Ranch." Decl. Stephen Roth ¶ 6 (March 4, 2003).

Plaintiffs brought this action to quiet title to their alleged easements for the Tamarack Lake dam and reservoir and the four irrigation ditches, and the parties have filed cross-motions for summary judgment.

### B. Summary Judgment Standards

Summary judgment is appropriate if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the burden then shifts to the party opposing the motion to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* at 323, 106 S.Ct. 2548. On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in favor of the nonmoving party. *T.W. Elec. Serv. v. Pacific*

*Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987).

## C. DISCUSSION

Plaintiffs move for summary judgment, claiming a right-of-way, or easement, for the Tamarack Lake dam and reservoir and the four irrigation ditches pursuant to the Irrigation or General Right of Way Act of March 3, 1891, 43 U.S.C. §§ 946–949 ("1891 Act"). Plaintiffs also move for summary judgment, alleging they possess a right of way for the four irrigation ditches pursuant to the Act of July 26, 1866, 43 U.S.C. § 661 ("1866 Act").[1]

Defendant has in turn moved for summary judgment, arguing as a threshold matter that Plaintiffs' action is barred by the Quiet Title Act's twelve year statute of limitations. Def.'s Memo in Response, at 3–5. Defendant also argues in support of its motion for summary judgment that Plaintiffs "have not established an easement for the dam and reservoir under the Act of 1866 or under the Act of 1891." *Id.,* at 2. Defendant concedes, however, that it "does not now and has not ever contested the validity of the easements for the" four irrigation ditches, and asks only for a declaration that those easements are subject to regulation by the Forest Service. *Id.*

Because compliance with the statute of limitations is a jurisdictional prerequisite, I turn first to the threshold question of whether Plaintiffs filed this suit within the applicable limitations period.

### 1. Statute of Limitations

Plaintiffs commenced this action under the Quiet Title Act, 28 U.S.C. ¶ 2409a, which provides "the exclusive means by which adverse claimants can challenge the United States' title to real property."

*Leisnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir.1999). The Quiet Title Act contains a statute of limitations under which "[a]ny civil action . . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a (g). The Act further provides that any "[s]uch action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id.*

The Quiet Title Act "is a waiver of sovereign immunity." *Bank One Texas v. United States,* 157 F.3d 397, 402 (5th Cir. 1998) (*citing Block v. North Dakota ex rel. Board of Univ. and School Lands,* 461 U.S. 273, 280, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). Because the "statute of limitations manifests a condition to this waiver," courts must construe it "strictly in favor of the Government." *Id.* Furthermore, "because it circumscribes the scope of a waiver of sovereign immunity, the statute of limitations manifests a jurisdictional prerequisite, rather than an affirmative defense." *Id.*

Defendant argues that Plaintiffs' predecessor-in-interest, J. Frank Cooper, knew of the Government's claim to the land on which the dam and reservoir sit as early as 1922, when he applied for a special use permit to construct the dam on the property. Pls.' Stmt. of Uncon. Facts, ¶ 80. The Forest Service granted Mr. Cooper's application, and in March of 1923 issued a special use permit allowing him to use twenty-six acres "for the purpose of constructing two dams and a spillway" and for "conservation of water for irrigation" of his lands. *Id.* In 1930, Mr. Cooper obtained a second special use permit identical to the first in virtually all respects except that it allowed for the use of thirty acres of land.

---

1. Despite the language of the Complaint, at 6, Plaintiffs do not argue that they have an ease-

ment in the Tamarack Lake dam and reservoir pursuant to the 1866 Act.

*Id.,* ¶ 81. Both permits were terminable "at the discretion of the District Forester or the Forester." *Id.*

According to Defendant, the fact that Mr. Cooper applied for and received these special use permits indicates he had "express notice" of the Government's claim to the property. Because "[a] permit which is terminable at will is fundamentally at odds with a perpetual easement," Defendant maintains, Plaintiffs' predecessor had notice of the Government's claim to the property as early as 1922 when he first applied for a special use permit. Defendant thus argues that Plaintiffs' claim for an easement over federal land for the Tamarack Lake dam and reservoir is barred by the Quiet Title Act's twelve year statute of limitations.

In response, Plaintiffs argue the fact that their predecessor knew of the government's ownership interest in the property was insufficient to trigger the running of the limitations period. For support they rely on *Michel v. United States,* 65 F.3d 130, 131 (9th Cir.1995), in which the Ninth Circuit concluded that "knowledge of the government's claim of title [is] not itself sufficient to trigger the running of the limitations period" under the Quiet Title Act. The plaintiffs in *Michels* brought suit against the United States seeking to quiet title to various access routes across a government-owned wildlife refuge. *Id.* The government argued that the Quiet Title Act's twelve year statute of limitations barred the plaintiffs' action because they had known for decades "that the government claimed title to the land." *Id.*

The Ninth Circuit disagreed, concluding that "[t]o start the limitations period, the government's claim must be adverse to the claim asserted by the" plaintiffs. *Id.* at 131–32. The court reasoned that "when the plaintiff claims a non-possessory interest such as an easement, knowledge of a

government claim of ownership may be entirely consistent with a plaintiff's claim." *Id.* at 132. A claim "for an easement across government land only accrues when the government, 'adversely to the interests of the plaintiffs, denies or limits the use of the roadway for access to plaintiffs' property.'" *Id. (quoting Werner v. United States,* 9 F.3d 1514, 1516 (11th Cir.1993)). The *Michel* court thus held that the plaintiffs' claim "did not accrue until the [plaintiffs] knew or should have known the government claimed the exclusive right to deny their historic access to the trails and roads across the refuge." *Id.*

Turning to the question of when the plaintiffs had notice of such a claim by the government, the court noted that "[i]f the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted." *Id.* at 132 (quoting *Shultz v. Department of Army,* 886 F.2d 1157, 1161 (9th Cir.1989)). According to the plaintiffs, the government had provided written acknowledgment of their "historic right of access" to the property just eight years before they commenced their lawsuit. *Id.* at 133. Because "the allegations of the complaint would permit proof that the government abandoned and then reasserted the claim of exclusive control over access within the 12 year limitations period," the court concluded, dismissal based upon the twelve year statute of limitations "was inappropriate." *Id.*

■ Here, even if the Government had earlier asserted a claim of exclusive control over the dam and reservoir, the record clearly indicates it abandoned any such claim five years ago. In September 1998, Stephen Roth and an authorized representative of the Forest Service signed an Operating Agreement for the Tamarack Lake

dam and reservoir. Exh. 55. That agreement specifically stated that "pursuant to...the Act of March 3, 1891, Ch. 561 (26 Stat. 1102), Stephen Roth, Trapper Peak Ranch owns a right-of-way to use federal lands for the purpose of the dam and reservoir...." Exh. 55, p. 2. Because the Government clearly affirmed the Plaintiffs' rights under the 1891 Act in 1998, the present action, commenced in 2003, is not barred by the twelve year statute of limitations.

Plaintiffs also rely on *Overland Ditch and Reservoir Company v. United States,* 96 N 797, 1996 WL 33484927, *7 (D. Colo. Dec 16, 1996), for the proposition that their claim did not accrue when their predecessor applied for and received his special use permits. In *Overland Ditch,* the plaintiff sought to expand a reservoir on federal land and applied for a special use permit in accordance with applicable federal regulations. *Id.* The defendants argued "that by applying for a special use permit plaintiff had notice of the defendants' interest." *Id.* The district court rejected that argument, noting that the plaintiff did not dispute "that defendants had an interest in the land." Citing *Michel,* the court instead reasoned that "plaintiff claim[ed] an easement, which may be consistent with the Governments ownership interest," and found "that plaintiff's compliance with then applicable regulations d[id] not constitute notice to plaintiff that the United States claimed an interest adverse to plaintiff's." *Id.*

Here, as in *Overland Ditch,* the fact that Plaintiffs' predecessor knew of the government's ownership interest in the land upon which the dam and reservoir were built was insufficient to trigger the running of the limitations period. Although Plaintiffs' predecessor sought and received a permit allowing him to build a dam on government land, this does not mean that he knew, or should have known, that the United States claimed to have an interest adverse to the ones Plaintiffs assert here. The fact that the special use permit was revocable does not mean that the Government necessarily contested the presence of an easement for the dam and reservoir. Even if the Forest Service had revoked the special use permit, an easement for the dam and reservoir could nevertheless remain under the authority of the 1891 Act. Moreover, as noted above, the Forest Service agreed as late as 1998 that an easement for the dam and reservoir existed under the 1891 Act. Exh. 55. That the Forest Service so agreed indicates that at least at that time it was not claiming to have an interest in the property adverse to that asserted by the Plaintiffs.

Accordingly, I conclude that the Quiet Title Act's twelve year statute of limitations does not preclude Plaintiffs' action. Having so concluded, I turn next to the question of whether Plaintiffs have established an easement for the Tamarack Lake dam and reservoir.

### 2. Tamarack Lake dam and reservoir

Plaintiffs argue they possess a right-of-way, or easement, for the dam and reservoir under the 1891 Act, which provided for rights-of-way through public and reserved lands for irrigation purposes.[2] They maintain that an easement arises under the Act "in one of two ways: (1) by

---

**2.** The Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. §§ 1701–84, repealed the 1891 Act. However FLPMA contained a savings provision pursuant to which rights acquired before October 21, 1976 remain in effect. 43 U.S.C. § 1701 (providing that "[n]othing in this Act...shall be construed as terminating any valid...right-of-way or other land use right or authorization existing on the date of approval of this Act," which was October 21, 1976)

construction of a ditch or reservoir; or (2) by the approval of maps filed thereunder." Memo. in Supp. of Pls.' Mot. for P.S.J., at 10 (*citing Overland Ditch*, 1996 WL 33484927, *10). According to Plaintiffs, their 1891 Act easement thus vested automatically upon completion of the dam and reservoir. Even were it necessary to obtain government approval, Plaintiffs maintain their predecessor-in-interest satisfied this requirement by filing a map with the Forest Supervisor and applying for a special use permit.

Defendant, in contrast, contends the only way to secure an 1891 Act easement is by filing the appropriate maps and obtaining the approval of the United States agency with jurisdiction over the land. Because Plaintiffs' "predecessors did not obtain governmental approval for a right-of-way on reserved lands," Defendant argues, they do not possess an easement under the 1891 Act. Def.'s Resp. to Pls.' Mot. for P.S.J., 5 (Apr. 11, 2003).

Section 946 of the 1891 Act provided, in pertinent part, as follows:

> The right of way through the public lands and reservations of the United States is hereby granted to any canal ditch company, irrigation or drainage district formed for the purpose of irrigation or drainage...to the extent of the ground occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof, and upon presentation of satisfactory showing by the applicant, such additional rights of way as the Secretary of the Interior may deem necessary for the proper operation and maintenance of said reservoirs, canals, and laterals.... Provided, that no such right of way shall be so located as to interfere with the proper occupation by the Government of any such reservation, and all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation....

43 U.S.C. § 946.

Section 947 set forth the procedures by which a canal or ditch company could avail itself of benefits under the Act. Under that section:

> Any canal or ditch company desiring to secure the benefits of sections 946 to 949 of this title shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the officer, as the Secretary of the Interior may designate, of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of or subject to such right of way.

43 U.S.C. § 947.

Section 946 does not confer any rights independently of Section 947, and the two statutory provisions "are to be construed together." *Union Land & Stock Co. v. United States*, 257 F. 635, 639 (9th Cir. 1919).

Section 948 broadened the scope of the Act, making it applicable "to all canals, ditches, or reservoirs...whether constructed by corporations, individuals, or association of individuals, on the filing of the certificates and maps therein provided for." 43 U.S.C. § 948. If an individual or association of individuals constructed the facility, it was sufficient under the Act "for such individual or association of individuals to file with the Secretary of the Interior,

and with the officer...of the land office where said land is located, a map of the line of such canal, ditch, or reservoir...." *Id.* However, "if any section of said canal or ditch shall not be completed within five years after the location of said section, the rights therein granted shall be forfeited as to any uncompleted section of said canal, ditch, or reservoir, to the extent that the same is not completed at the date of the forfeiture." *Id.*

Plaintiffs argue that the 1891 Act provides an *in praesenti* grant of a right of way, and maintain their easement vested upon construction of the Tamarack Lake dam and reservoir. For support, they rely on the *Overland Ditch* decision, which involves facts very similar to those present here. The plaintiff in that case brought suit against the government to quiet title to an easement for the Overland Ditch and Reservoir System. *Overland Ditch,* 1996 WL 33484927, *1. The reservoir and ditch were located "on surveyed and unsurveyed land, and on reserved land." *Id.* at *2. As had Plaintiffs' predecessor, the plaintiff in *Overland Ditch* applied for and received a special use permit authorizing construction. *Id.* at *3. Moreover, as do the Plaintiffs in this case, the plaintiff in *Overland Ditch* claimed "that with regard to unsurveyed lands it is not necessary to apply to the Government, and that an easement pursuant to the 1891 Act vests automatically upon construction of the facility". *Id.* at *10. Plaintiff argued that "prior approval is not available" for easements on unsurveyed lands, and therefore maintained that the only way for an easement to arise on unsurveyed land was "upon completion of construction." *Id.*

The Government, in contrast, took the same position that it does in this case, and claimed that "a party seeking an easement must apply to the Government and the Government must approve the easement in

order for it to vest." *Id.* Thus, in *Overland Ditch,* the government claimed that the plaintiff had acquired "rights under the 1891 Act only for that portion of the Overland Ditch and Reservoir completed and accepted by the General Land Office in 1926." *Id.*

The District Court rejected the defendant's argument, identifying a statutory "distinction between the grant of a right-of-way and approval of a map." *Id.* at *10. As the court noted, Section 946 provides, in part, that "all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation." *Id.* According to the court, that sentence "does not require Government approval of a right-of-way over reserved land," but "only specifies that all *maps* of the location are subject to the Government's approval." *Id.* The court ultimately concluded that "the only way for an easement to arise on unsurveyed land was by construction of the facility." *Id.* at *11.

To support its holding that construction of the facility does create an easement under the 1891 act, the court relied on the Department of Interior's decision in *Sierra Ditch & Water Co.,* 38 Publ. Lands Dec. 547, 548 (1910). There, the ditch company claimed it had an 1891 Act easement on land first reserved as part of the Stanislaus Forest Reserve, and later added to the Yosemite National Park. *Id.* at 548. The ditch company submitted its application for an 1891 Act right of way on the very day the land was added to the national park. *Id.* In considering whether the company had a right of way, the Department explained that "Whatever else might be argued or concluded with reference to this act, it is undoubtedly true that rights of way thereunder attach in only two ways: (1) by construction of a ditch or reservoir; and (2) by the approval of maps filed

thereunder, subject to certain conditions subsequent." *Id.* at 548–49. Although not specifically stated in the opinion, it appears that the ditch company had not constructed the ditch or reservoir but had only surveyed the property and submitted maps for approval.

Because the ditch company had not yet received government approval of its application premised on the maps, the Department concluded the ditch company did not have a right-of-way under the 1891 Act, nor could it claim some inchoate right based on the filing of the maps. "... before a right of way may be acquired by the filing of maps, such maps must have first been approved by the Secretary of the Interior, and until such approval shall have been given the applicant acquires no rights which are not within the power of Congress to deny by intervening legislation." *Id.* 549.

█ In an attempt to distinguish the *Sierra Ditch* statement that one way for an easement to attach is by construction, the Defendant here argues that "[t]he decision did not specify that an easement could arise from unauthorized construction," but only from authorized construction. Defs.' Br. in Response, at 15. Contrary to the Government's suggestion, however, construction of the Tamarack Lake dam and reservoir was indeed authorized. Plaintiffs' predecessor applied for and received two special use permits authorizing him to construct the dam at issue. According to *Sierra Ditch*, an 1891 Act right of way attached upon completion of that construction.

To further support its determination that an 1891 Act easement vests upon construction, the *Overland Ditch* court also relied on *Barlow v. Northern Pac. Ry. Co.*, 240 U.S. 484, 36 S.Ct. 456, 60 L.Ed. 760 (1916), in which the United States Supreme Court interpreted a statutory

scheme very similar to the 1891 Act. At issue in *Barlow* was whether a railway company that had substantially completed construction of a new railroad possessed a right-of-way under the Act of March 3, 1875. *Id.* at 487, 36 S.Ct. 456. The 1875 Act included the following provision, nearly identical to Section 947 of the 1891 Act, instructing railroads to file a map and various corporate documents:

Any railroad company desiring to secure the benefits of sections 934 to 939 of this title, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the officer, as the Secretary of the Interior may designate, of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: *Provided,* That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road.

43. U.S.C. § 937.

The Supreme Court concluded that the railway company, which had substantially completed construction, possessed a right of way under the 1875 Act even though it had not filed a map and profile as ostensibly required by the statute. *Barlow,* at 488, 36 S.Ct. 456. In so concluding, the Court noted that the statutory filing requirement "was intended not to deprive of the power to fix and secure the right of way by construction in advance of filing such map and profile, but simply to afford

the means of securing the right of way in advance of construction." *Id.* at 485, 36 S.Ct. 456 (citing *Jamestown & N.R. Co. v. Jones,* 177 U.S. 125, 20 S.Ct. 568, 44 L.Ed. 698 (1900)). It explained that "[t]he two methods of securing the right, the one by construction of the road, and the other in anticipation of construction by filing a map," did not conflict with each other but simply provided two "means of securing the right which [the] statute gave." *Id.* (*citing Jamestown,* 177 U.S. 125, 20 S.Ct. 568). In both *Barlow* and *Jamestown,* the Supreme Court concluded that a railroad company could secure a grant under the 1875 Act "by an actual construction of its road, or in advance of construction by filing a map as provided" in the statute. *Jamestown,* 177 U.S. at 131, 20 S.Ct. 568.

Plaintiffs urge this Court to do as the district court did in *Overland Ditch,* and apply the Supreme Court's interpretation of the 1875 Act to the provisions of the 1891 Act at issue here. The Department of the Interior has done the same, noting that "[t]he two acts are similar and are to have like construction." *DeWeese v. Henry Investment Company,* 39 Pub. Lands Dec. 27, 33 (1910). In *DeWeese,* the Department explained that the 1891 Act "is in terms like" the 1875 Act, and "both acts are float grants, not attached to the land or to any particular land until an act termed in the statute 'location,' which means some visible thing actually done on the land fixing the rights of way and limits of the right claimed." *Id.* at 32. The Department noted that, under the 1875 Act applicable to railroads, "[t]he right may be obtained by construction without filing of a map at all." *Id.* at 33. Construing the two acts similarly, the Department determined that "[t]he filing of a map is

requisite only to protect the grantee from claims by other parties." According to the Department, the right of way "grant is obtained by force of the statute and some active work." *Id.*

The Supreme Court of New Mexico took a similar approach in *United States v. Lee,* 15 N.M. 382, 110 P. 607 (1910). At issue in *Lee* was whether a party could acquire a right of way under the 1891 Act for a partially constructed reservoir "over the unsurveyed public lands of the United States without first having obtained the permission of the Department of the Interior as provided by the statute in regard to surveyed public domain." *Id.* at 609. Construing the 1891 Act like the 1875 Act, the court concluded that a party could indeed secure an 1891 Act right of way over unsurveyed public lands without the approval or permission of the Secretary of the Interior. *Id.* at 610, 612. As the court noted, under Section 947 of the Act, "no maps or plats are required to be filed until within 12 months after the lands have been surveyed."[3] *Id.* at 610. The court further observed that, under the applicable regulations, "no such approval or permission as the law contemplates could be granted for a right of way for irrigation purposes while the land remains unsurveyed." *Id.* at 612.

The court found it was not reasonable to interpret the Act and its regulations as requiring the approval of "the Secretary of the Interior as a condition precedent to the construction of irrigation enterprises upon unsurveyed lands, when the granting of such approval was impossible under the law." *Id.* The court cited to regulations of the Department of Interior that the 1891 Act "grant becomes fixed so far as the

---

**3.** 43 U.S.C. § 947 provides, in part, that a party seeking a right of way on unsurveyed land shall "within twelve months after the survey thereof by the United States, file with

the officer, as the Secretary of the Interior may designate, of the land office for the district where such land is located a map of its canal or ditch and reservoir . . . ."

right of way is concerned upon the construction of the ditch or canal, the approval of the Secretary afterwards being in the nature of a confirmation of the grant and a completion of the title thereof upon the records kept by the government." *Id.* at 610.

Because the 1891 Act does not authorize the Secretary to approve easements on unsurveyed land, I agree that it makes little sense to construe to the 1891 Act as requiring that approval for an easement to vest. Were this court to accept the Government's position on this issue, the result would indeed be that no easement could ever vest under the 1891 Act on unsurveyed land. The effect would be to place the reservoir, canals and ditches into a sort of legal purgartory so far as the Act of 1891 is concerned. That is, there would be no legal means of protecting the investment in ditches, canals and reservoirs on unsurveyed public lands pending the survey, although the Act clearly contemplates their existence pending the survey, as once the survey is completed a means is provided for perfecting the easement. As the above cases indicate, the more sound result is to conclude that congress intended that an 1891 Act easement on unsurveyed land vested upon construction, as the "means of securing the right which [the] statute gave." This result does not take away any of the authority of the government to set reasonable restrictions on the use of the water courses and easement appurtenant thereto in accord with the provisions of the Act of 1891.

To support its argument to the contrary, however, the Government relies on several cases in which various courts have determined that a right of way under the 1891 Act does not arise without the approval of

the Secretary of the Interior. *See, United States ex. rel. Sierra Land & Water Co. v. Ickes*, 84 F.2d 228, 231 (D.C.Cir.), *cert. denied*, 299 U.S. 562, 57 S.Ct. 24, 81 L.Ed. 414 (1936); *Grindstone Butte Project v. Kleppe*, 638 F.2d 100 (9th Cir.1981); *United States v. Rickey Land & Cattle Co.*, 164 F. 496 (C.C.N.D.Cal.1908); *Kern River Co. v. United States*, 257 U.S. 147, 151, 42 S.Ct. 60, 66 L.Ed. 175 (1921).

These cases are all distinguishable, however, either because the prospective grantee had not yet completed construction or because the land at issue had been surveyed but no map approved by the Secretary. Accordingly, the issue in these cases was not, as it is here, whether a right of way on unsurveyed land arises under the 1891 Act upon construction and without the approval of the Secretary of the Interior.

Addressing the cases relied on by Defendant more specifically, Defendant cites to *Rickey Land & Cattle Co.*, for the proposition that approval by the Secretary of the Interior "is a condition precedent to the taking effect of the grant of right of way" under the 1891 Act. *Rickey,* 164, F. at 500. Although the circuit court did indeed state that such approval was required before the right of way in that case would vest, the prospective grantee in that case had neither completed construction of the reservoir nor received the approval of the Secretary of the Interior.[4] *Id.* at 497, 498–99.

Defendant also relies on *United States ex rel. Sierra Land & Water Co. v. Ickes*, 84 F.2d 228 (D.C.Cir.1936), to support its argument that agency approval is necessary for a right of way to vest under the 1891 Act. In *Ickes*, the plaintiff sought a

---

4. The court in *Rickey* was analyzing provisions in the "Act to repeal timber-culture laws, and for other purposes" (Act March 3, 1901, c. 561, 26 Stat. 1101, 1102) that are identical to those in the 1891 Act.

writ of mandamus to compel the Secretary of the Interior to approve several applications for rights of way, despite the fact that the Sierra Land & Water Co. had no right to water for use in the ditch and reservoir system at issue. *Id.* at 229. The court denied the plaintiff's request for a writ, and in doing so concluded that "a right of way grant in praesenti does not vest [under the Act] until approval of the application by the secretary." *Id.* (citing *Rickey,* 164 F. at 500). Because construction had not yet begun in *Ickes,* however, the issue before the court in that case was different from the issue here. The *Ickes* court properly determined that a right of way cannot vest before construction without the approval of the Secretary of the Interior. That court did not, however, address the issue of whether a right of way on unsurveyed land can vest upon construction without the approval of the secretary. As set forth in the *Lee* decision, when that issue is confronted head on, a fair reading of the Act of 1891, supported by the Department in *Sierra Ditch, supra,* and, under similar language, the U.S. Supreme Court in *Barlow* and *Jamestown,* compels the conclusion that the actual construction of the reservoir and dam, otherwise meeting all other criteria of the Act, serves as an alternative to the requirement for a map subject to approval by the Secretary.

*Grindstone Butte Project v. Kleppe,* 638 F.2d 100 (9th Cir.1981) is similarly distinguishable. Granted that, citing *Ickes,* the Ninth Circuit rejected Grindstone's argument that the 1891 Act "granted rights-of-way in praesenti", *Grindstone* at 102, the issue in *Grindstone* was fundamentally different from the issue here as the question was not whether an easement had been created by compliance with the Act of 1891 but rather what conditions could be imposed pursuant to the Act on an acknowledged easement. Hence, although the

court noted that rights of way under the Act do not vest without the Secretary's approval, its comment in that regard was not essential to its holding and did not address the specific issue raised here. I would further suggest this is not an ordinary "in praesenti" situation as, unlike the cases holding no easement can arise absent the approval by the Secretary of a map of the improvements, here the fact of complete construction of the dam and resulting reservoir must be viewed as in lieu of the map in order to afford some legal protection to the dam builder. This again is in accord with the previously cited railroad cases finding that upon completion of the rail line the approval of the map becomes a perfunctory task and therefore recognizing the legal easement in the railroad pending that approval.

For these reasons, the cases upon which the Government relies to support its argument that an easement cannot arise under the 1891 Act without the approval of the Secretary of the Interior are not controlling here. Under the approach taken by the court in *Overland,* and applying the Supreme Court's analysis of virtually identical statutory provisions in *Jamestown* and *Barlow,* I instead conclude that an 1891 Act easement on unsurveyed land vests upon construction.

Based on the foregoing, I conclude that a right of way for the Tamarack Lake dam and reservoir vested upon construction, and without the prior approval of the Secretary of the Interior which, as the Act is drafted, could not otherwise be obtained, but yet subject to the Secretary's authority to impose terms and conditions. Plaintiffs are accordingly entitled to a judgment quieting title to a right of way under the 1891 Act for the Tamarack Lake dam and reservoir.

### 3. Water conveyance facilities

Plaintiffs also claim that they possess a right of way for the Long Ditch, Long–Conner Ditch A, Long–Conner Ditch B, and the Meathrel Ditch pursuant to both the 1866 Act and the 1891 Act. Defendant concedes in its response brief that it "does not now and has not ever contested the validity of the easements for the" four irrigation ditches." Def.'s Br. in Response, at 2. According to the Defendant, "[t]hose ditches occupy land acquired by the United States and the ditches are noted and reserved in the United States' deeds to the respective properties." *Id.*

■ In its reply brief, however, Defendant argues for the first time that "Plaintiffs are not entitled to an order that they have an easement under the 1866 Act and 1891 Act for the Long Ditch, Long–Conner Ditch A, Long–Conner Ditch B, and the Meathrel Ditch." Def.'s Reply, at 5 (June 17, 2003). Defendant indicates it "disclaims an interest in these ditches to the extent reflected in the United States deeds for the properties encumbered by these ditches," but claims this "does not mean Plaintiffs are entitled to an order that they have met the requirements and have easements under the Acts of 1866 and 1891 for these ditches." *Id.* In closing, Defendant summarily argues that Plaintiffs "have not carried their burden of proof" on summary judgment, and "have shown neither that they have met the requirements of the Act of 1866 nor that they have met the requirements of the Act of 1891." *Id.* Defendant does not explain what statutory requirements it believes Plaintiffs have failed to satisfy, however, and does not cite to anything in the record to support its position. Contrary to Defendant's argument, review of the record indicates that Plaintiffs have indeed met their burden of establishing the presence of an easement for the four ditches under the Act of 1866.

The Act of 1866 granted rights of way to ditch and canal owners over public lands under certain circumstances. 14 Stat. 251–53 (codified at 43 U.S.C. § 661, commonly referred to as R.S. 2339). FLPMA repealed the Act of 1866, but contained a savings provision pursuant to which rights acquired under the Act were not affected. *See,* 43 U.S.C. §§ 1701, 1769. The 1866 Act provided, in pertinent part, as follows:

> Whenever, by priority of possession, rights to use the water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed . . . .

43 U.S.C. § 661.

Accordingly, for a right way to vest under the 1866 Act, the prospective grantee must possess valid water rights under state law, and the water facilities must have been constructed on unoccupied and unreserved lands. *See, Bear Lake & River Waterworks & Irrigation Co. v. Garland,* 164 U.S. 1, 12, 17 S.Ct. 7, 41 L.Ed. 327 (1896).

Here, the land on which the ditches at issue are located was reserved as the Bitterroot National Forest in 1897. To establish an easement under the 1866 Act, Plaintiffs must thus show that construction of the ditches occurred before 1897, and that their predecessors possessed valid water rights under Montana law by that date as well.

The materials submitted by Plaintiffs in support of their motion for summary judgment indicate their predecessors indeed

possessed such water rights, and Defendant points to no evidence to the contrary. Six water rights appurtenant to the Trapper Peak Ranch that are delivered by means of the four ditches were decreed by the state district court in 1915. Pls.' Stmt. Uncontroverted Facts ¶¶ 52, 54–55. Five of those six rights have priority dates before 1897. *Id.* at ¶ 53. These priority dates represent the dates that a completed ditch existed for each right, actually diverting the water and putting it to a beneficial use. *See, Murray v. Tingley,* 20 Mont. 260, 50 P. 723, 725 (1897); *Wheat v. Cameron, et al.,* 64 Mont. 494, 210 P. 761, 763 (1922). Noting that Defendant makes no specific argument to the contrary, this Court concludes Plaintiffs have met their burden of establishing their predecessors possessed valid water rights under state law.

The materials submitted by Plaintiffs in support of their motion also demonstrate that construction of the four ditches was completed before reservation of the Bitterroot Forest in 1897. The water rights on Chaffin Creek with priority dates in 1883, 1890, and 1894, are delivered by means of the Long Ditch and/or Long–Conner Ditch. Pls.' Stmt. of Uncontroverted Facts, ¶¶ 28, 30, 35. Additional water rights on Chaffin Creek with priority dates in 1889 are delivered by means of the Meathrel Ditch. *Id.* at ¶ 40. As noted above, these decreed priority dates represent the dates that a completed ditch existed for each right, actually diverting the water and putting it to beneficial use. In addition, a survey plat prepared in 1891 by the General Land Office depicts an irrigation ditch running parallel and to the north of Chaffin Creek, in the current location of the Long Ditch. Pls.' Stmt. of Uncontroverted Facts, ¶ 57.

Furthermore, the Forest Service has previously admitted that these ditches were in place prior to reservation of the land as National Forest. *Id.,* ¶ 63; Pls.' Br. in Support, Exh. Nos. 41, 42, 42, 44. For example, in a letter dated January 22, 1975, a District Ranger wrote that "[a] review of old records revealed the ditches ... were in place prior to enactment of the Forest Reserve," which "means you have automatic easement on these ditches as they now exist and no special use permit will be required."

Although Defendant argues generally that Plaintiffs have not met their burden of establishing an 1866 Act easement, it points to no evidence to rebut Plaintiffs' assertion that the ditches were completed by the time the land was reserved as National Forest in 1897. I accordingly conclude that Plaintiffs have met their burden of establishing that construction of the ditches was completed by the time the land was reserved for National Forest purposes in 1897.

Because Plaintiffs have established that construction of the ditches occurred before 1897, and that their predecessors possessed valid water rights under Montana law by that date as well, I conclude that Plaintiffs possess an 1866 Act easement for those ditches. The Plaintiffs are accordingly entitled to a judgment quieting title to rights of way under the Act of 1866 for the Long, Long–Conner, and Meathrel Ditches.

Having so concluded, I need not reach the question of whether Plaintiffs also possess an easement for those ditches under the 1891 Act. I nevertheless note that, in light of my determination that Plaintiffs possess an 1891 Act easement for the dam and reservoir, Plaintiffs would similarly possess an 1891 Act easement for the four irrigation ditches.

In its final argument, Defendant also "requests a specific declaration that any valid easements for the ditches .... are

subject to Forest Service regulation." Def.'s Br. in Resp., at 3. As Plaintiffs note, however, this case is simply a quiet title action. Nowhere in its pleadings does the Defendant raise the issue of the Forest Service's ability to regulate easements under the 1866 Act. Because there is no such claim in any of the pleadings, the extent to which the Forest Service may regulate easements under the 1866 Act is not at issue here and I decline to address it.